Gene **WRIGGELSWORTH,** in his capacity as **Ingham County Sheriff,** and **Ingham County, Plaintiffs/Counter–Defendants**

v.

Ellis **BRUMBAUGH, Defendant/Cross and Counter–Plaintiff**

and **Capitol City Lodge No. 141 of the Fraternal Order of Police,** a labor association, **Defendant/Cross–Defendant.**

No. 5:00–CV–15.

United States District Court, W.D. Michigan, Southern Division.

Feb. 1, 2001.

John R. McGlinchey, Cohl, Stoker & Toskey, PC, Richard D. McNulty, Cohl, Stoker & Toskey, PC, Lansing, MI, for Gene Wriggelsworth, in his capacity as Ingham County Sheriff, Ingham, County of, a municipal corporation, plaintiffs.

Thomas A. Baird, White, Przybylowicz, Schneider & Baird, PC, Okemos, MI, R. David Wilson, Wilson, Lawler & Lett, Lansing, MI, for Ellis Brumbaugh, an individual, Capitol City Capitol City Lodge No. 141 of the Fraternal Order of Police, a labor association, defendants.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court in light of its Opinion and Partial Judgment of November 30, 2000. Said Opinion and Partial Judgment granted summary judgment in favor of Defendant/Counter–Plaintiff Ellis Brumbaugh and determined that issues of damages would be determined after receipt of briefing from interested parties. The Court has now received the scheduled briefing on the issue of damages and determines that summary judgment may be granted on the various issues of damages because there are no genuine issues of material fact respecting damages.

### Factual Background

Upon review of the briefing, it is apparent that there is essential agreement as to the facts of this matter. The pertinent facts respecting damages are as follows: Ellis Brumbaugh made application for re-employment under the Uniformed Services Employment and Re-employment Rights Act of 1994 (hereafter "USERRA"), codified at 38 U.S.C. §§ 4301–33, for his former employment as a police detective to begin on October 1, 1999. At the time of his initial application for re-employment, Sheriff Gene Wriggelsworth was of the belief that Brumbaugh was entitled to re-employment under USERRA. However, after discussions with the affected labor union (Capital City Lodge No. 141 of the Fraternal Order of Police) (hereafter "the Union"), Wriggelsworth learned that the Union opposed the re-hiring and would file a grievance as to the re-hiring because of its effects on other Union members. As illustrated in the previous briefing, the Union's legal position was supported by some case law and policy arguments. Faced with this situation, the Sheriff and the County chose to resolve the dispute by filing the instant declaratory action in January 2000 and by hiring Brumbaugh as an entry-level officer, beginning on February 24, 2000, pending resolution of the declaratory action.

Detective pay, at Brumbaugh's seniority, for the year 1999 totals $44,639. For the period of October 1, 1999 to December 31, 1999, the pay totals $11,159.75.

Detective pay, at Brumbaugh's seniority, for the year 2000 totals $45,978.00. During this year, Brumbaugh earned $23,416.00 at his entry-level deputy position. Given these figures, his net loss for the year 2000 equals $22,562.00.

Detective pay, at Brumbaugh's seniority, for the year 2001 equals $47,357.00. Entry-level deputy pay for 2001 equals $28,037. This amounts to a difference of $19,320 per year or $1,610 per month.

Given Brumbaugh's long service, he would also be entitled to longevity bonuses as to his detective position in December 1999 and December 2000 under the applicable Collective Bargaining Agreements. (*See* Brumbaugh's Memorandum of Law, Attachments 1 and 2.) The December 1999 bonus is computed as follows: $18,000 (base salary figure for those making more than $18,000 per annum), multiplied by 9 percent (the applicable seniority rate) and then divided by four (to reflect a proration for only having worked one-quarter of the year). This results in a 1999 longevity bonus of $405. The 2000 bonus, computed in the same way but without the proration, is $1,620. The total bonuses equal $2,025. A longevity bonus for the year 2001 is not due until December 2001.

Given the above figures, Ellis Brumbaugh's net loss in salary and bonuses (less wages earned) for the period of October 1, 1999 until January 31, 2001 amounts to $37,356.75.

On September 24, 1999, just prior to the anticipated October 1, 1999 employment, Brumbaugh purchased dress clothing intended for use in the detective job from the Men's Wearhouse costing $1,329.09. (Brumbaugh Response, Exhibits 5 and 6.) This was done in reliance on the Collective Bargaining Agreement clothing reimbursement policy, which at the time allowed detectives reimbursement for business clothing in an amount not to exceed $525 per year. (Brumbaugh Memorandum of Law, Attachment 1 at 44.)

In October 1999, Ingham County's attorney, Richard McNulty, sought an opinion from the Municipal Employees' Retirement System of Michigan regarding the effect of re-employment of Ellis Brumbaugh as to his pension rights as an County employee. The Director responded by giving an opinion that Brumbaugh would not be entitled to pension credit for his military service because, among other reasons, the MERS Plan, Section 9(4), and the pertinent state statutes explicitly provide that members of the military shall not receive credit for periods of military service for which the members are eligible for benefits from another retirement system.

(Wriggelsworth Memorandum of Law, Exhibit D.)

### Legal Analysis

To enforce the terms of USERRA, Congress has specifically provided the following remedies:

(d) Remedies.—(1) In any action under this section, the court may award relief as follows:

(A) The court may require the employer to comply with the provisions of this chapter.

(B) The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.

(C) The court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

(2)(A) Any compensation awarded under subparagraph (B) or (C) of paragraph (1) shall be in addition to, and shall not diminish, any of the other rights and benefits provided for under this chapter.

(2)(B) ....

(3) A State shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section.

(e) Equity powers.—The court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter.

38 U.S.C. § 4323(d)-(e). *See, e.g., Groom v. Department of Army,* 82 M.S.P.R. 221, 224 (M.S.P.B.1999) (holding that USERRA authorized remedies including reinstatement with like status and backpay).

Given the availability of such remedies and the Court's prior ruling concerning summary judgment (*Wrigglesworth v. Brumbaugh,* 121 F.Supp.2d 1126 (W.D.Mich.2000)), the parties have expressed some agreements and disagreements about the appropriate remedies in this suit.

### Reinstatement

Plaintiffs and Defendant agree that reinstatement is an appropriate equitable remedy. Brumbaugh has also requested that incident to reinstatement the employer be made to credit him sick leave time accrued prior to his military service, sick leave and vacation leave that would have accrued since October 1, 1999 had he been properly re-employed, and seniority of approximately 29.5 years. There are no objections to these requests, which are consistent with the statute and case law. Accordingly, Brumbaugh will be immediately reinstated with said rights and benefits of employment.

### Backpay

Plaintiffs and Defendant also agree that backpay (lost compensation) is an appropriate remedy, although their computations of backpay differ slightly. The Court's analysis of backpay, taken from the documents filed by the parties, computes lost compensation at $37,356.75. Thus, an award of backpay for lost compensation between October 1, 1999 and January 31, 2001 will be order in that amount.

### Costs and Attorney Fees

Brumbaugh has also requested an award of costs and reasonable attorney fees. Title 38 United States Code Section 4323 authorizes a prevailing veteran who has hired private counsel to obtain reasonable attorney fees and litigation expenses. Brumbaugh is also entitled to an award of costs pursuant to 28 U.S.C. § 1920. Brumbaugh claims $1,143.69 in costs and $32,736.50 in attorney fees and has filed documentation supporting these figures. The Plaintiffs have not objected to these figures. Upon review of the matter, the Court determines that the amounts requested are reasonable and that they were actually and necessarily expended in this litigation. Accordingly, the Court will approve an award of costs and attorney fees

in favor of Defendant Brumbaugh and against Plaintiffs in the total amount of $33,880.19.[1]

### Clothing Allowance

Plaintiffs and Defendant Brumbaugh disagree as to his entitlement to a clothing allowance. Plaintiffs' argument is that since Brumbaugh has received deputy uniforms and a cleaning allowance he should not also receive a clothing allowance for detectives (which he did not actually need during that time given his assignment). Plaintiffs' argument frankly ignores the pertinent statutory language. Under US-ERRA, a returning veteran is entitled to not only pay, seniority and employee benefits, but also all of the "rights and benefits" of the employment. These terms are defined at 38 U.S.C. § 4303(2) as follows:

(2) The term "benefit", "benefit of employment", or "rights and benefits" means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

■ Thus, it is clear from this language that the "rights and benefits" of employment are not limited to wages, health and pension benefits, but includes all other rights which the employer by contract provides for eligible employees. Under the case law interpreting this section, the benefits of employment are to be viewed expansively. *See Yates v. Merit Systems Protection Board,* 145 F.3d 1480, 1484 (Fed.Cir.1998) (holding that "benefits" were to be construed expansively and in-

cluded employer training and evaluation); *Petersen v. Dept. of Interior,* 71 M.S.P.R. 227 (M.S.P.B.1996) (holding that law enforcement commission was a "benefit of employment"); *Fernandez v. Department of Army,* 84 M.S.P.R. 550, 553 (M.S.P.B. 1999) (commenting that it was likely that a living quarters allowance was a "benefit of employment"). Construing this language liberally, as the Court is required to do under the Supreme Court's decisions in *King v. St. Vincent's Hospital,* 502 U.S. 215, 221 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) and *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 284, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), the Court determines that the clothing allowance of $525 is a "right and benefit" of employment and that Brumbaugh became entitled to receive this amount from the County beginning on October 1, 1999.

### Liquidated Damages

Plaintiffs and Defendant Brumbaugh also disagree as to Brumbaugh's entitlement to liquidated damages equaling the amount of his actual damages. Brumbaugh argues that since the Plaintiff Wriggelsworth initially believed that he was required to rehire Brumbaugh as a detective the subsequent failure to do so warrants liquidated damages for a "willful" violation. Plaintiffs contend that this would be improper given that there was some legal support for the action taken, given that a declaratory action was promptly filed to obtain a judicial ruling, and given that Brumbaugh was hired at an entry-level position in the interim.

Neither the parties nor this Court have found any case precedent interpreting the liquidated damages clause of USERRA. Nevertheless, a few observations about that clause are in order. The clause employs the term "willful," which term became a term of art in the late 1980s and

---

**1.** Ordinarily costs are billed post-judgment in accordance with Local Rule 54 and attorney fees are assessed post-judgment in accordance with Federal Rule of Civil Procedure

**54.** However, in this case, there is no reason to delay entry of judgment as to these amounts given that there is apparent agreement as to these amounts.

early 1990s due to three United States Supreme Court decisions which interpreted the term "willful" in other federal statutes imposing liquidated damages. In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–30 and n. 22, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court interpreted the term "willful" in the Age Discrimination in Employment Act as meaning that an employer engaged in conduct known to be prohibited or engaged in conduct with reckless disregard of its prohibition. The Supreme Court also made clear that where the employer's conduct was reasonable and in good faith that liquidated damages were not warranted. Similar holdings were made by the Supreme Court in *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133–135, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) as to the Fair Labor Standards Act and in *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 616–17, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) as to the Age Discrimination in Employment Act. These same standards have been utilized by the Sixth Circuit Court of Appeals as to federal statutes containing the term "willful." *See, e.g., Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 967 (6th Cir. 1991).

Since USERRA was enacted in 1994, it was enacted at a time when Congress was aware of the Supreme Court's interpretation of the term "willful" in other federal statutes. The selection of the term in USERRA's liquidated damages clause without reference to a different standard for the award of liquidated damages shows an intent by Congress to impose a similar standard as to USERRA cases. In light of such standard, it is clear that Brumbaugh is not entitled to an award of liquidated damages. The Plaintiffs were, in this case, caught between divergent and reasonable interpretations of USERRA proffered by the Union and Brumbaugh. The selection of one those interpretations, while employing Brumbaugh at a lesser position and bringing a declaratory action to obtain a judicial answer, demonstrates good faith and not willful conduct. As such, the Court determines that Brumbaugh is not entitled to liquidated damages.

### Pension Benefits

Finally, there is disagreement concerning whether Brumbaugh should receive credit for the time of his military service (some 16 years) toward his civilian pension. The Sheriff, the County and the pension administrator take the position that Brumbaugh is not entitled to "double dip" relating to his pension rights because of state statutory prohibitions and because of the pension plan language prohibiting "double dipping." Brumbaugh takes the position that USERRA explicitly requires pension credit for military service and that contrary provisions of state law and the pension plan are preempted.

As noted by Brumbaugh, two provisions of USERRA are pertinent to the dispute concerning the pension. Title 38 U.S.C. § 4318 provides, in pertinent part, that:

. . . .

(a)(2)(A) A person reemployed under this chapter shall be treated as not having incurred a break in service with the employer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services.

(B) Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

(b)(1) An employer reemploying a person under this chapter shall, with respect to a period of service described in subsection (a)(2)(B), be liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in subsection (a)(2) and shall allocate the amount of any employer contribution for the person in the same manner and to the same extent

the allocation occurs for other employees during the period of service . . . . .

38 U.S.C. § 4318.

Furthermore, USERRA expressly contemplates that its provisions preempt inconsistent state laws and prevent employers and unions from engaging in bargaining which discriminates against returning veterans. Title 38 U.S.C. § 4302 provides in pertinent part:

(b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302(b).

The language of Section 4302 broadens the protections available under the predecessor statutes and case precedents. Prior to enactment of USERRA, federal courts interpreted the predecessor statutes as preempting any state law and collective bargaining agreements which would lessen the protections available under the statutes. *See Jennings v. Illinois Office of Education,* 589 F.2d 935, 944 (7th Cir. 1979); *Peel v. Florida Dept. of Transportation,* 600 F.2d 1070 (5th Cir.1979), *affirming* 443 F.Supp. 451 (N.D.Fla.1977); *Waltermyer v. Aluminum Co. of America,* 804 F.2d 821 (3d Cir.1986); *Rudisill v. Chesapeake & Ohio Ry. Co.,* 167 F.2d 175, 178–9 (4th Cir.1948); *Fitz v. Board of Educ. of Port Huron Area Schools,* 662 F.Supp. 1011, 1014–1015 (E.D.Mich.1985) (citing *Peel* ).

In enacting USERRA, Congress intended a *uniform* set of protections available to returning veterans in the several states and expressly forbade modification of these protections by either state law, benefit plans or contractual bargaining because it would frustrate the statutory purpose. Preemption of state law is intended in precisely those kind of circumstances. *See Jones v. Rath Packing Co.,* 430 U.S. 519,

97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) (holding that a state law imposing different labeling standards for bacon and flour was preempted because it would frustrate the Congressional purpose of providing direct comparisons for consumers); *City of Burbank v. Lockheed Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) (holding state statute imposing airport curfew preempted because it inhibited Congress' purpose in fostering flexible, air traffic flow). Congressional intent is the "touchstone" for making such preemption determinations. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

 In this case, because of the clear expression of Congress that inconsistent state law, contracts and benefit plans be preempted, the Court determines that the state law and plan provisions referenced by Plaintiffs are preempted by USERRA. The Court also determines that under USERRA Brumbaugh is entitled to service credit as to his pension for the period in which he was engaged in active military service following his departure from the employment and that the employer shall make allocations and fund Brumbaugh's pension benefits for the period of his active military service.

## CONCLUSION

Accordingly, a Final Judgment and Permanent Injunction shall enter in favor of Defendant/Counter–Plaintiff Ellis Brumbaugh and against Plaintiffs. Said Judgment shall award only reinstatement, back pay, costs and attorney fees, clothing allowance and pension benefits as more particularly described in this Opinion. Said awards shall bear interest as permitted under Federal law.