Johnnie PAXTON, et al.

v.

CITY OF MONTEBELLO.

Case No. CV 09–3691–RC.

United States District Court,
C.D. California.

May 19, 2010.

Carolina Veronica Diaz, for Plaintiff.

Andres C. Hurwitz, for Defendant.

## PROCEEDINGS: ORDER RE PLAINTIFFS' REMEDIES

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On March 18, 2010, this Court granted plaintiffs summary judgment on their claims under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), except for plaintiffs' claim that they did not have to complete probation upon returning from military service. *See Paxton v. City of Montebello,* 712 F.Supp.2d 1007, 2010 WL 1255915 (C.D.Cal.2010). This Court also ordered the parties to attempt to resolve the amount of plaintiffs' damages, attorney's fees and costs, and, in the event an amicable agreement could not be reached, to file briefs addressing plaintiffs' remedies. On April 16, 2010, plaintiffs filed a notice of motion for back-pay, liquidated damages and prejudgment interest, a supporting memorandum of points and authorities, and the supporting declaration of Carolina Veronica Diaz with exhibits, and on April

19, 2010, the parties filed a stipulation, agreeing to certain facts relating to plaintiffs' damages and remedies. On April 28, 2010, the City filed its opposing memorandum of points and authorities, and on May 5, 2010, plaintiffs filed their reply. Oral argument was heard on May 19, 2010.

## DISCUSSION

To enforce the terms of USERRA, Congress has specifically provided the following remedies:

(d) Remedies.—(1) In any action under this section, the court may award relief as follows:

(A) The court may require the employer to comply with the provisions of this chapter.

(B) The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.

(C) The court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

(2) (A) Any compensation awarded under subparagraph (B) or

(C) of paragraph (1) shall be in addition to, and shall not diminish, any of the other rights and benefits provided for under this chapter.

　•　　＊　　＊　　＊

(3) A State shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section.

(e) Equity powers.—The court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter.

38 U.S.C. § 4323(d)-(e); *Dees v. Hyundai Motor Mfg. Ala., LLC,* 605 F.Supp.2d 1220, 1229 (M.D.Ala.2009), *affirmed by,* 368 Fed.Appx. 49 (11th Cir.(Ala.)) (per curiam); *Wriggelsworth v. Brumbaugh,* 129 F.Supp.2d 1106, 1109 (W.D.Mich.2001).

## I. Annual Leave:

The parties have stipulated that each plaintiff "would have accrued 193.83 Annual Leave hours during the unpaid military leave" that is the subject of this litigation, Stipulation ¶ 1, and the Court accepts the parties' stipulation. The parties disagree, however, on how plaintiffs should be paid this annual leave. "Plaintiffs contend that these hours should be placed in their respective Annual Leave banks for their prospective use and accrual and payout"; whereas, the "City contends that these hours should be paid out at the rate of [plaintiffs'] respective hourly rates of pay at the time they returned from military leave...." Stipulation ¶ 2. Yet, neither party cites any authority to support its position. Nevertheless, given that USERRA is " 'broadly construed in favor of its military beneficiaries[,]' " *Petty v. Metro. Gov't of Nashville–Davidson County,* 538 F.3d 431, 446 (6th Cir.2008) (quoting *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 303 (4th Cir.2006)), *cert. denied,* —— U.S. ——, 129 S.Ct. 1933, 173 L.Ed.2d 1057 (2009); *see also Middleton v. City of Chicago,* 578 F.3d 655, 662 (7th Cir.2009) ("USERRA is to be liberally construed."), and plaintiffs are still employed by the City, the accrued annual leave should be placed in plaintiffs' existing annual leave banks. *Cf. Nichols v. Frank,* 771 F.Supp. 1075, 1080 (D.Or.1991), *affirmed by,* 42 F.3d 503 (9th Cir.1994). However, if placement of the accrued annual leave into the existing annual leave

bank of either plaintiff would result in a plaintiff's annual leave bank containing hours exceeding the number permitted by the City, the City must create a separate annual leave bank for that plaintiff to contain the annual leave accrued under USERRA. *Cf. Agee v. United States*, 77 Fed. Cl. 84, 90–91 (Fed.Cl.2007).

## II. Attorney's fees and costs:

The parties have stipulated that "a reasonable attorney's fee award to Plaintiffs is $40,000 plus $1297.50 in costs[,]" Stipulation ¶ 5, and the Court accepts the parties' agreement.

## III. Back pay (Steps):

■ This Court has held that "upon successfully completing probation, City should have awarded plaintiffs the seniority they would have had if they had not gone on military leave for twelve months[.]" *Paxton*, 712 F.Supp.2d at 1013–14, 2010 WL 1255915 at *5. However, the parties disagree on the date from which plaintiffs should be awarded retroactive back pay. On the one hand, plaintiffs contend they should be awarded "backpay [sic] retroactive to the date they would have passed probation, had they not gone out on military leave, specifically February 25, 2008"; whereas, the City contends plaintiffs should be awarded back pay "when they passed probation, but ... not ... from the period of their military leave or continued probation." Stipulation ¶ 2. The parties agree that if plaintiffs are awarded back pay from February 25, 2008, plaintiff Paxton should be awarded back pay in the total amount of $11,212.00 [1] and plaintiff Contreras should be awarded back pay in the total amount of $12,461.00.[2] *Id.* Addi-

tionally, the parties appear to agree plaintiffs should be at Step 5 of the City's pay scale. *Id.*

Plaintiffs are correct. To assure plaintiffs are awarded their full seniority and back pay after returning from military service and passing probation, the City must retroactively place plaintiffs in Step Three as of February 25, 2008, and thereafter increase plaintiffs' steps annually so that, as of February 25, 2010, plaintiffs are at Step 5. This means plaintiffs should be awarded retroactive back pay at the City's rate of pay for each step, commencing at Step Three on February 25, 2008, and increasing each year to the present. Accordingly, plaintiff Paxton is entitled to $11,212.00 in back pay, and plaintiff Contreras is entitled to $12,461.00 in back pay.

## IV. Liquidated Damages:

■ As set forth above, Congress has provided in USERRA for the award of liquidated damages when the defendant's actions in breach of USERRA are willful. *See* 38 U.S.C. § 4323(d)(1)(C). Although there are no Ninth Circuit cases discussing USERRA's liquidated damages provision, since this "provision is very similar to 29 U.S.C. § 626(b), a provision allowing liquidated damages for willful violations under the [Age Discrimination and Employment Act ("ADEA"),]" *Fink v. City of New York*, 129 F.Supp.2d 511, 523 (E.D.N.Y. 2001); *Satterfield v. Borough of Schuylkill Haven*, 12 F.Supp.2d 423, 444–45 n. 5 (E.D.Pa.1998), the Court will apply the ADEA's willfulness standard in determining whether liquidated damages are appropriate here. *See, e.g., Hance v. Norfolk S. Rwy. Co.*, 571 F.3d 511, 519 (6th Cir.2009)

---

**1.** For plaintiff Paxton, this means: $7,572.00 for the period of February 25, 2008, to February 24, 2009; $3,096.00 for the period of February 25, 2009, to February 24, 2010; and at least $544.00 since February 25, 2010. Stipulation ¶ 2.

**2.** For plaintiff Contreras, this means: $8,305.00 for the period of February 25, 2008, to February 24, 2009; $3,096.00 for the period of February 25, 2009, to February 24, 2010; and at least $1,060.00 since February 25, 2010. Stipulation ¶ 2.

("Because we have found no cases regarding damages under USERRA in this circuit, we look to our case law regarding damages available for other types of employment discrimination."). A violation is willful under the ADEA if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 617, 113 S.Ct. 1701, 1710, 123 L.Ed.2d 338 (1993); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985); *see also Serricchio v. Wachovia Sec., LLC.,* 606 F.Supp.2d 256, 265 (D.Conn.2009) ("Similar to liquidated-damages provisions in other federal statutes, an employer acts willfully under USERRA if the evidence shows that it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" (citations omitted)). Plaintiff has the burden of proving willfulness. *United States Equal Employment Opportunity Comm'n v. Massey Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244, 1250 (11th Cir.1997), which "'may be shown by circumstantial evidence.'" *Equal Employment Opportunity Comm. v. Pape Lift, Inc.,* 115 F.3d 676, 680 (9th Cir.1997) (quoting *Cassino v. Reichhold Chems., Inc.,* 817 F.2d 1338, 1348 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988)).

■ The plaintiffs claim the City's willfulness is shown "through the various emails and memorandums [sic] referencing the Plaintiffs military leave, and Defendants [sic] knowledge of USERRA[,]" which show the City "knew the issues surrounding Plaintiffs military leave and ... knew about USERRA." Plaintiffs' Memorandum at 8:3–23. However, a violation of USERRA is not willful merely because "the employer simply knew of the potential applicability of the [statute,]" *Thurston,* 469 U.S. at 127, 105 S.Ct. at 625; *see also Sanchez v. Puerto Rico Oil Co.,* 37 F.3d

712, 721 (1st Cir.1994) ("A finding of willfulness requires something more than merely showing that an employer knew about the [statute] and its potential applicability in the workplace."), and the e-mails plaintiffs cite show the City sought advise of counsel regarding compliance with USERRA, Declaration of Carolina Veronica Diaz ¶¶ 4–5, Exhs. C–D, which does not establish willfulness. *Thurston,* 469 U.S. at 130, 105 S.Ct. at 626; *see also Reed v. Honeywell Int'l. Inc.,* 2009 WL 886844, *9 (D.Ariz.) (no willfulness when employer consulted attorneys and attempted to comply with USERRA, but made legal error as to compliance requirements). Thus, the Court finds plaintiffs have not met their burden to show the City's breach of USERRA was willful, and plaintiffs are not entitled to liquidated damages.

## V. Overtime pay:

The parties have stipulated that plaintiff Paxton is entitled to $1,034.58 in overtime pay and plaintiff Contreras is entitled to $1,151.07 in overtime pay, Stipulation ¶ 3, and the Court accepts the parties' agreement.

## VI. Prejudgment Interest:

■ "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss[,]" *City of Milwaukee v. Cement Div., Nat. Gypsum Co.,* 515 U.S. 189, 195, 115 S.Ct. 2091, 2095, 132 L.Ed.2d 148 (1995), and the Supreme Court has "repeatedly stated that prejudgment interest 'is an element of [plaintiffs'] complete compensation.'" *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 175, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989) (citation omitted); *see also Kansas v. Colorado,* 533 U.S. 1, 10, 121 S.Ct. 2023, 2029, 150 L.Ed.2d 72 (2001) ("[A] monetary award does not fully compensate for an injury unless it includes an interest component."). Thus, plaintiffs are entitled to prejudgment interest. *See*

*Serricchio,* 606 F.Supp.2d at 267 ("[T]he Court finds that [plaintiff] is entitled to prejudgment interest on the award of damages" under USERRA); *Fink,* 129 F.Supp.2d at 525–27 ("[A]n award of prejudgment interest on [plaintiff's] back pay award [for USERRA violations] is entirely appropriate").

The plaintiffs contend "California's 10% interest rate [should] be used in calculating Plaintiffs['] prejudgment interest." Plaintiff's Memorandum at 14:5–12. However, plaintiffs cite no authority for this proposition and, "[g]enerally, 'the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.' " [3] *Blankenship,* 486 F.3d at 628; *Grosz–Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1164 (9th Cir.2001); *see also Serricchio,* 606 F.Supp.2d at 267 (calculating USERRA prejudgment interest under 28 U.S.C. § 1961). Here, plaintiffs have presented nothing—let alone no substantial evidence—to justify the application of California law. This Court, thus, applies Section 1961 to calculate the prejudgment interest due plaintiffs on their back pay and overtime pay awards, which total $12,246.58 for plaintiff Paxton and $13,612.07 for plaintiff Contreras. Using the weekly average for the years in question beginning, for example, on February 25, 2008, *see Serricchio,* 706 F.Supp.2d 237, 252, 2010 WL 1330629 at *6 ("While the 1–year constant maturity Treasury yield provides an accurate rate at a given point in time, applying only the rate for the week preceding judgment fails to account for the significant rate fluctuations over the previous ... years ...."), the rates are 1.98% (week ending 2/29/08), 0.72% (week ending 2/27/09), and 0.34% (week ending 2/29/10). Applying these rates to plaintiff Paxton's total award ($12,246.58 (/) 27 months = $453.58 per month or $5442.92 per year), plaintiff Paxton is entitled to $229.18 prejudgment interest.[4] Similarly, applying these rates to plaintiff Contreras's total award ($13,612.07 (/) 27 months = $504.15 per month or $6049.81 per year), plaintiff Contreras is entitled to $254.76 prejudgment interest.[5]

## ORDER

Plaintiffs' motion for liquidated damages **IS DENIED.**

Plaintiffs' motion for back pay, prejudgment interest, and other remedies **IS GRANTED,** as follows:

    1. Plaintiffs Johnnie Paxton and Brandon Contreras are each awarded 193.83

---

3. " 'Substantial evidence' is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Blankenship v. Liberty Life Assur. Co. of Boston,* 486 F.3d 620, 628 (9th Cir.2007); *Blanton v. Anzalone,* 813 F.2d 1574, 1576 (9th Cir.1987).

4. This amount is obtained, as follows:
$5442.92 * 1.98 = $107.77 + $5442.92 = $5550.69 (total through 2/25/08–2/24/09)
$5550.69 + 5442.92 = $10993.61 * 0.72% = $79.15 + $10993.61 = $11072.76 (total through 2/25/09–2/24/10)
$11072.76 + $1360.73 ($5442.92/4) = $12433.49 * 0.34% = $42.27 = $12475.76 (total through 2/25/10–5/19/10)

$12475.76–$12246.58 = $229.18 prejudgment interest.

5. This amount is obtained, as follows:
$6049.81 * 1.98 = $119.79 + 6049.81 = $6169.60 (total through 2/25/08–2/24/09)
$6169.60 + $6049.81 = $12219.41 *0.72% = $87.98 + $12219.41 = $12307.39 (total through 2/25/09–2/24/10)
$12307.39 + $1512.45 (6049.81/4) = $13819.84 * 0.34% = $46.99 = $13866.83 (total through 2/25/10–5/19/10).
$13866.83—$13612.07 = $254.76 prejudgment interest.

in accrued annual leave, and defendant City shall place such accrued annual leave into plaintiffs' annual leave banks, or, in the event placement of the accrued annual leave into the annual leave bank of either plaintiff would result in the plaintiff's annual leave bank containing hours exceeding the number permitted by the City, the City must create a separate annual leave bank for that plaintiff to contain the annual leave accrued under USERRA, no later than ten (10) days from the entry of Judgment.

2. The plaintiffs are awarded $40,000.00 in reasonable attorney's fees and $1,297.50 in costs, and defendant City shall pay the attorney's fees and costs to plaintiffs, no later than ten (10) days from the entry of Judgment.

3. Plaintiff Johnnie Paxton is awarded $11,212.00 in back pay and plaintiff Brandon Contreras is awarded $12,461.00 in back pay, and, retroactive to February 25, 2010, plaintiffs shall be placed in Step Five. Defendant City shall pay plaintiffs their back pay awards no later than ten (10) days from the entry of Judgment.

4. Plaintiff Johnnie Paxton is awarded $1,034.58 in overtime pay and plaintiff Brandon Contreras is awarded $1,151.07 in overtime pay, and defendant City shall pay plaintiffs their overtime pay, no later than ten (10) days from the entry of Judgment.

5. Plaintiff Johnnie Paxton is awarded prejudgment interest in the amount of $229.18 and plaintiff Brandon Contreras is awarded prejudgment interest in the amount of $254.76, and defendant City shall pay plaintiffs their prejudgment interest, no later than ten (10) days from the entry of Judgment.